# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| AEGIS ELECTRIC & GAS INTERNATIONAL SERVICES LTD., and BARBICAN CORPORATE MEMBER LIMITED | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION NO.: 19-cv-1280<br>)<br>) |
| v. | )<br>) |
| EVER-CROFT PROPERTIES, LLC | )<br>) |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND PETITION FOR APPOINTMENT OF AN UMPIRE

Plaintiffs AEGIS Electric & Gas International Services Ltd. and Barbican Corporate Member Limited (collectively "Plaintiffs") hereby file their Complaint for Declaratory Judgment and Petition for Appointment of an Umpire against Ever-Croft Properties, LLC ("Defendant") seeking a declaration of the scope of arbitration under the subject insurance policy and exclusion of Defendant's chosen arbitrator, and an appointment of an umpire. In support thereof, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.

AEGIS Electric & Gas International Services Ltd. ("AEGIS") is a foreign entity organized under the laws of England and Wales. It is a citizen and resident of the United Kingdom with its principal place of business at 33 Gracechurch Street, London EC3V 0BT, United Kingdom.

2.

Barbican Corporate Member Limited ("Barbican") is a foreign entity organized under the laws of England and Wales. It is a citizen and resident of the United Kingdom with its principal place of business at 33 Gracechurch Street, London EC3V 0BT, United Kingdom.

3.

Defendant is a limited liability company organized and existing pursuant to the laws of the State of Texas, with its principal place of business at 9400 Harwin Dr., Houston, Texas 77036. Defendant's members are Ying J. Zhu and Xuemei Zhao.

4.

Ying J. Zhu is a permanent resident and citizen of the State of Texas.

5.

Xuemei Zhao is a permanent resident and citizen of the State of Texas.

6.

This Court has personal jurisdiction over the Defendant because it is a citizen of the State of Texas.

7.

This Court has subject matter jurisdiction over each of the claims on diversity grounds. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction as Plaintiffs are completely diverse from the Defendant and the amount in controversy exceeds $75,000.00 as to each of the Plaintiffs.

8.

This Court also has subject matter jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201, *et. seq.* Pursuant to 9 U.S.C. §§ 202, 203, this Court has original jurisdiction as the claims in this declaratory judgment action involve an arbitration agreement arising out of a commercial relationship that is not entirely between citizens of the United States.

9.

Venue is proper pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 204, because the property that is the subject of this litigation is situated in this district and division.

10.

This action is brought pursuant to 9 U.S.C. §§ 3, 4, 5, 201, 206 and 28 U.S.C. § 2201 and seeks declaratory relief as to the scope of arbitration under the subject insurance policy and exclusion of Defendant's chosen arbitrator, and the appointment of an umpire. An actual and justiciable dispute over the potential claims and causes of action subject to arbitration, the exclusion of Defendant's chosen arbitrator, and the appointment of an umpire exist between the Parties.

## BACKGROUND FACTS

**I.     THE PROPERTY AND INSURANCE**

11.

Defendant owns office buildings located adjacent to each other at 6202-6222 Evergreen St., Houston, Texas 77081 (the "Evergreen Building") and 7330-7338 Ashcroft, Houston, Texas 77081 (the "Ashcroft Building") (collectively, the "Properties").

12.

Plaintiffs subscribed to non-marine property policy No. 3162251-069 (the "Policy") which was issued to the Defendant for the policy period September 18, 2016, to September 18, 2017. (*See* Exhibit A).

13.

The Policy provides certain coverage for the Properties, subject to its terms, limits, conditions, and exclusions.

14.

The Policy applies a deductible of 3% the total insured value for wind and hail losses.

15.

The Policy includes an arbitration provision that states:

If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire.  The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

## II.  THE LOSS AND ADJUSTMENT

16.

On September 8, 2017, Defendant made a claim under the Policy for roof leaks and damaged ceilings at the Properties (the "Loss" or "Claim"), alleging the Loss was caused by Hurricane Harvey.

17.

Plaintiffs retained VeriClaim, Inc. ("VeriClaim") to adjust the Claim.  On September 15, 2017, VeriClaim inspected the Properties and did not find any evidence of wind damage from Hurricane Harvey, but it did find evidence of long-term wear and tear.

18.

Following VeriClaim's inspection, Plaintiffs retained Engineering Design & Testing Corp. ("EDT") to further inspect the Properties.  EDT concluded that the Properties' roofs were not damaged by Hurricane Harvey.  Instead, EDT found the roofs had sustained normal long-term wear and tear caused by exposure to the elements and that the internal leaks coincided with deteriorated portions of the roofs.

19.

On October 28, 2017, Plaintiffs denied Defendant's Claim based on a pre-existing damage limitation, a wear and tear exclusion, a micro-organism exclusion, a due diligence condition, and a leakage exclusion.

20.

In late-May or early-June 2018, Defendant sent demands for appraisal for the Properties to Plaintiffs, in which it identified Mickey L. Jones as its appraiser. Defendant also included purported repair cost value ("RCV") estimates totaling 289,965.78 ($292,465.78 RCV subject to a $2,500 deductible) for the Ashcroft Building and $447,674.43 ($450,174.43 RCV subject to a $2,500 deductible) for the Evergreen Building. The appraisal letters reference purported policy language allowing for appraisal demands that is not in the Policy.

21.

On July 25, 2018, Plaintiffs denied Defendant's request for appraisal as it was inappropriate.

## III. DEFENDANT'S BAD FAITH DEMAND AND PLAINTIFF'S DEMAND FOR ARBITRATION

22.

On January 3, 2019, Defendant sent a demand letter to Plaintiffs alleging Plaintiffs violated certain aspects of the Texas Insurance Code (the "Demand Letter") (*See* Exhibit B).

23.

In the Demand Letter, Defendant contends Plaintiffs: (i) refused to participate in appraisal and made misrepresentations regarding their obligations to participate in appraisal in violation of Tex. Ins. § 541.060(a)(1); (ii) conducted an unreasonable investigation by failing to use competent and disinterested professionals and failing to use industry standards for evaluating damage, in violation of Tex. Ins. § 541.060(a)(7); (iii) made misrepresentations of material facts regarding the scope and extent of damage to the Properties and as to coverage for the damage, in violation of Tex. Ins. § 541.060(a)(1); (iv) failed to disclose all available information regarding the claim and their investigation, in violation of Tex. Ins. § 541.060(a)(3); and (v) failed to timely resolve the Claim, in violation of Tex. Ins. § 541.060(a)(4).

24.

In the Demand Letter, Defendant alleged that the damage to the Properties totaled $742,640.21. After applying a $54,000 deductible, Defendant demanded

payment of $688,640.21 for covered damages and an additional $4,750 for attorney's fees. Defendant threatened to file a lawsuit, including claims for breach of contract and various other claims under Texas Insurance Code §§ 541.060, 542.055-060, if payment was not made within 61 days.

25.

On January 28, 2019, Plaintiffs responded to the Demand Letter by advising that it was invoking binding arbitration pursuant to the Policy (the "Arbitration Letter").

26.

On February 6, 2019, Defendant responded to the Arbitration Letter by agreeing that the Policy's arbitration provision covers any breach of contract dispute but contending that its statutory and/or extra-contractual claims pursuant to the Texas Insurance Code claims are not subject to arbitration. Defendant advised that it would be filing a lawsuit in Texas state court asserting statutory and/or extra contractual claims after the deadline to respond to the Demand Letter expired. Defendant also advised that it was selecting Mickey Jones as its arbitrator; the same person that Defendant had previously selected as its appraiser. (*See* Exhibit C).

27.

Mickey Jones is a licensed public adjuster and an appraiser. According to public records, Mr. Jones has served as an appraiser on approximately 175 claims, representing the policyholder 100% of the time. (*See* Exhibit D). Mr. Jones has no legal background or experience.

28.

Mr. Jones owns the company Jones & Associates Appraisers ("JAA"). JAA's stated mission is to "[h]elp people and business's put claims together and make right with their Insurance companies." (*See* Exhibit E). In advertisement, JAA has asserted that the insured "need[s] to be in charge of your Insurance claim and NOT the insurance company!" (*See* Exhibit F) (emphasis in original).

29.

On February 7, 2019, Plaintiffs notified Defendant that they were choosing Kevin Hromas with US Insurance Information, LLC dba Kevin Hromas & Associates to act as their arbitrator. Mr. Hromas is a licensed independent adjuster, is a Certified Property Insurance Umpire through the Insurance Appraisal and Umpire Association, Inc., and received a Juris Doctorate from the University of Houston Law Center.

30.

On February 12, 2019, Mr. Hromas communicated with Mr. Jones regarding the selection of a competent and disinterested arbitration umpire. As the situation involved arbitration, and not appraisal, Mr. Hromas suggested Former Judge Erin Lunceford, Judge Mark Davidson, or Judge George Risner as potential umpires.

31.

Judge Lunceford is a licensed attorney in Texas and was previously a judge in the 61st District Court in Texas.

32.

Judge Davidson is a licensed attorney in Texas, who previously served as Judge of the 11th District Court in Texas and currently serves as the Multi-District Litigation Judge for all asbestos cases in the State of Texas.

33.

Judge Risner is a former building inspector who has served as Justice of the Peace for Precinct 2, Place 2 in Texas for more than 20 years.

34.

On February 16, 2019, Mr. Jones responded to Mr. Hromas. In his letter, Mr. Jones advised that he had "been appointed the appraiser for the claim." Mr. Jones stated that he rejects Mr. Hromas' suggested umpires because he does not believe

this is a situation where a Judge is needed or appropriate. Instead, Mr. Jones proposed Louis Mayeux, Steve Medeiros, Jason Malone, or Thomas Brawner to serve as umpire. Mr. Jones signed his letter as the "Appraiser for the Insured." (Exhibit G). In Mr. Jones' email to Mr. Hromas containing the letter, Mr. Jones refers to the intended services being provided on the Claim as "appraisals" and to himself as "Appraiser for Ever-Croft Properties." (Exhibit H).

35.

Upon information and belief, none of the umpires that Mr. Jones suggested have any legal background.

36.

On February 16, 2019, Mr. Hromas responded to Mr. Jones, rejecting Mr. Jones' suggested umpires as either biased or not competent for the issues at hand in the arbitration.

37.

That same day, Mr. Jones responded to Mr. Hromas and advised that he would be informing Defendant's attorney of the situation with the umpire selection. Mr. Jones also advised that "I don't practice law nor do I want to." (*See* Exhibit I).

38.

On February 20, 2019, Defendant communicated with Plaintiffs, in which it raised the impasse between the chosen arbitrators and need to address the selection of the third arbitrator.

## COUNT I – DECLARATION THE POLICY'S ARBITRATION PROVISION ENCOMPASSES DEFENDANT'S PURPORTED STATUTORY AND/OR EXTRA-CONTRACTUAL CLAIMS

39.

Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

40.

The Policy contains a valid and enforceable arbitration provision that applies to any failure of the Parties to agree, in whole or in part, regarding any aspect of the Policy.

41.

All of Defendant's purported statutory and/or extra-contractual claims are based on Plaintiffs' alleged breach of obligations they owed Defendant arising out of the Policy.

42.

All of Defendant's purported statutory and/or extra-contractual claims are premised and dependent on the assertion that the Claim is covered under the Policy.

43.

All of Defendant's purported statutory and/or extra-contractual claims arise from and are intertwined with Plaintiffs' denial of coverage for the Claim.

44.

Plaintiffs dispute Defendant's assertions that they breached any obligations they owed Defendant arising out of the Policy, that the Claim is covered under the Policy, and that they improperly denied coverage for the Claim.

45.

As all of Defendant's purported statutory and/or extra-contractual claims are related to the Parties' failure to agree as to Plaintiffs' obligations under the Policy and coverage for the Claim, they are all subject to the Policy's arbitration provision and must be compelled to arbitration.

**COUNT II – APPOINTMENT OF ONE OF THE INDPENDENT AND DISTINTERESTED UMPIRES RECOMMENDED BY MR. HROMAS**

46.

Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

47.

Defendant has, at least in part, conceded to submit to arbitration pursuant to the Policy's arbitration provision.

48.

The arbitration provision requires that the arbitrators be "competent and disinterested."

49.

Under the arbitration provision, the arbitrators chosen by the Parties are to mutually agree to a competent and disinterest umpire. The arbitration provision does not advise how to select an umpire if the arbitrators cannot agree on an umpire.

50.

Pursuant to 9 U.S.C. § 5, when an umpire cannot be chosen pursuant to the terms of an arbitration provision and/or there is a lapse in the naming of an umpire, then a court can designate and appoint an umpire upon the petition of a party.

51.

Mr. Hromas and Mr. Jones could not agree to the appointment of an umpire.

52.

The umpires Mr. Hromas suggested were all disinterested and had extensive law-related backgrounds, including experience serving as judges.

53.

None of the umpires Mr. Jones suggested had any law-related background, and Mr. Jones indicated he did not believe any legal experience was necessary for the "appraisals."

54.

The dispute between the Parties is being submitted to arbitration, not appraisal. The arbitration will involve normal litigation procedures, including discovery, motion practice, and a hearing. In addition to reviewing the facts of the case, the arbitrators will be required to interpret the Policy provisions and apply applicable law. To serve competently as an arbitrator, a person must have an understanding and background in the law and how it is interpreted and applied.

55.

Given that none of the umpires Mr. Jones suggested have any law-related background, they are not competent to serve as arbitrators in this matter.

56.

Given the umpires Mr. Hromas suggested have extensive law-related backgrounds, including experience as judges, they are competent to serve as arbitrators in this matter.

57.

Accordingly, this Court should designate and appoint Judge Lunceford, Judge Davidson, or Judge Risner as umpire.

### COUNT III – DECLARATION EXCLUDING MR. JONES AS ARBITRATOR FOR FAILURE TO BE COMPETENT AND DISINTERESTED

58.

Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

59.

The arbitration provision requires that the arbitrators be "competent and disinterested."

60.

The dispute between the Parties is being submitted to arbitration, not appraisal. The arbitration will involve normal litigation procedures, including discovery, motion practice, and a hearing. In addition to reviewing the facts of the case, the arbitrators will be required to interpret the Policy provisions and apply applicable law. To serve competently as an arbitrator, a person must have an understanding and background in the law and how it is interpreted and applied.

61.

Mr. Jones is a public adjuster and appraiser, who has performed 100% of his appraisals on behalf of policyholders.

62.

The primary focus of Mr. Jones' company, JAA, is to advocate for policyholders against insurance companies.

63.

Mr. Jones believes that the Parties' dispute is being submitted to appraisal, not arbitration. He does not believe any law-related qualifications are required.

64.

Mr. Jones has no legal background and admits that he does not practice the law nor wants to practice the law.

65.

Mr. Jones views himself as the Defendant's appraiser and not as an independent and impartial arbitrator.

66.

Mr. Jones is not disinterested and is not competent to serve as an arbitrator in this matter, and should be removed as an arbitrator.

**WHEREFORE,** Plaintiffs pray for a judgment and Order:

(1) Declaring that all potential claims and disputes between the Parties, including Defendant's statutory and/or extra-contractual claims, are subject to the Policy's arbitration provision and are compelled to arbitration;

(2) Designating and appointing Judge Lunceford, Judge Davidson, or Judge Risner as umpire;

(3) Declaring that Mr. Jones is precluded from acting as an arbitrator as he is not disinterested or competent, and requiring Defendant to select a new disinterested and competent arbitrator;

(4) Awarding Plaintiffs their costs and attorney's fees; and

(5) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

[SIGNATURE ON THE FOLLOWING PAGE]

Respectfully submitted this 8th day of April, 2019.

        WALKER WILCOX MATOUSEK LLP
By: */s/ Kristine M. Sorenson*
        Kristine M. Sorenson
        State Bar No. 24072446
        Federal Bar No. 1044078
        1001 McKinney, Suite 2000
        Houston, Texas 77002
        Telephone:  (713) 654-8001
        Telecopy:   (713) 343-6571

**ATTORNEY FOR PLAINTIFFS AEGIS ELECTRIC & GAS INTERNATIONAL SERVICE LTD. AND BARBICAN INSURANCE GROUP**